Our next case is the Flying Pigs v. RRAJ Franchising RRAJ Franchising, LLC RRAJ Franchising, LLC There are two issues before the court here today. The first is whether an action to foreclose on a state law equitable lien gives rise to federal jurisdiction solely by virtue of the fact that the thing to be foreclosed upon is a federally registered trademark. The second issue is whether the settlement and voluntary dismissal of a lawsuit involving Flying Pigs judgment debtor, but to which Flying Pigs was not a party, is claim preclusive as to Flying Pigs equitable lien claim in foreclosure action. We've identified substantial authority establishing that the answer to both questions should be no, and we're therefore asking this court to reverse the ruling of the district court finding jurisdiction and dismissing Flying Pigs claims. The primary contention is the district court had no jurisdiction, and it should have granted a motion to remand? That's correct. That's our first argument. And if you're right on that, no need to get to the second point. That's correct. If you're right on that, what would we do? What would the opinion say at the end of it? The opinion ultimately would find that the district court lacked jurisdiction. No, but what would it say? We vacate? We vacate the ruling of the district court in order that the district court remand the case to state court. So we remand for a remand? That's correct, Your Honor. Okay. I'd just like to highlight a couple of facts in terms of the timeline of events. The two marks in question in this case were registered to an entity called CHELDA with the Patent and Trademark Office many years before the disputes relating to this case arose. Flying Pigs established an equitable lien on those two marks in Guilford County Superior Court on July 30, 2010. About three weeks later, the defendant's predecessor in interest, a related entity, purchased the assets of another entity, Ham's Restaurants, Inc., which was a subsidiary of CHELDA. It purchased those assets from bankruptcy. And importantly, the bankruptcy schedules of Ham's Restaurants, Inc. indicated that it owned no intellectual property. And the assets were purchased as is, where is, without a warrant. Is that a known or is that an abandoned? It said there is a column that says intellectual patents, copyrights, or other intellectual property. And there's a column that says none. And the box was checked none, that they did not possess any. The Bank of North Carolina, another creditor of CHELDA, and CHELDA filed a lawsuit seeking to restrict RCR from using the Ham's marks. A preliminary injunction was granted by the Middle District in that action, finding that CHELDA had established a likelihood of success on the merits. Is that Judge Beatty? That was Judge Beatty, Your Honor. And the Guilford County thing was Judge Eagle? That's correct. And that was how our equitable lien was established. There was another lawsuit in Lenore County. And that is the action. Three lawsuits underlying this thing? In a sense, Your Honor, that's correct. The action that we're in front of, Your Honors, today was an action that we filed in Guilford County Superior Court seeking to foreclose, excuse me, in Lenore County Superior Court, seeking to foreclose on the equitable liens that were established in Guilford County Superior Court. Which is in the Middle District of North Carolina. Correct. And you filed a case in Lenore County, which is where, Kenston? Yes, Your Honor. Which is in the eastern part of North Carolina. Correct. That's where Flying Pigs is based. That's where Flying Pigs originated. So we filed that action in Lenore County Superior Court to foreclose on our equitable lien, which is the natural and reasonable place for a party to file a foreclosure action under Article 29A of Chapter 1 of the North Carolina General Statutes. So we filed that action, RRAJ, then removed the action to the eastern district of North Carolina, citing 28 U.S.C. 1338, which provides jurisdiction for actions arising out of laws relating to patents, trademarks, and copyrights. Now, while trademarks, indisputably, are the subject of what we're trying to foreclose upon, and they are the subject of our equitable lien, our federal courts have held that the mere involvement of the rights listed in 1338, such as patents, trademarks, and copyrights, does not in and of itself give rise to federal jurisdiction. Instead, we have to look at the Caterpillar v. Williams case, which refers to the well-pleaded complaint. In viewing the well-pleaded complaint, does the action arise under a federal statute? Now, our courts have said that the arising under jurisdiction, the vast majority of cases where there's federal jurisdiction, will be cases where a federal statute creates the cause of action. It's the famous statement by Justice Holmes many years ago that the federal cause of action will create the jurisdiction. Unquestionably, that's not the case here. I don't think there's any dispute that our equitable lien is a creature of state law, and our action to foreclose the procedure that we're pursuing under Chapter 1 of the North Carolina General Statutes is a state court procedure. The question, then, is the mere federal flavor created by the fact that there is a trademark being foreclosed upon, does that alone create federal question jurisdiction? And we contend that it does not. We begin by citing the Republic Pictures case from the Ninth Circuit. In that case, the Ninth Circuit concluded that a federal district court does not have jurisdiction to foreclose a mortgage on a copyright. And we contend that the analysis is similar here. A mortgage on a copyright and a lien on a trademark, for all practical purposes, I think is indistinguishable from the jurisdictional context. In both situations, we have a lien on a federally created right. And in the Republic Pictures case, the Ninth Circuit concluded that there was not a substantial federal issue justifying jurisdiction. Now, RRAJ seeks to argue, and the district court apparently accepted, that the mere fact that there is a presumption of ownership created by a federal statute is sufficient to give rise to jurisdiction. And we indicated this in our complaint. We referenced the fact that the trademarks had been recorded with the Patent and Trademark Office, demonstrating the ownership of CHELDA when our lien attached. Ownership had already been established. It's been established in the underlying litigation. If you're referring to the middle district litigation, they were fighting over ownership. That was actually an infringement case. And CHELDA was seeking to— I'm sorry, in your equitable lien and judicial sale action in Guilford County. In Guilford County, Judge Eagles indicated in her order that CHELDA was the owner of those two trademarks, and therefore that our equitable— So that's established as your argument. We don't even need to go there. As to us, that's our contention. Now, RRAJ seeks to argue, and the district court apparently accepted, that the mere fact of that presumption of ownership gives rise to federal jurisdiction. And again, make no mistake, the registration does establish ownership, but it's that presumption that arises by virtue of a federal statute. When we're not suing under the Lanham Act, we're not alleging infringement. We're not seeking Lanham Act remedies. We're simply seeking to foreclose. We're not seeking to claim that the appellee does not own the marks. We acknowledge that they own the marks. We are simply seeking to get paid. And so the question is, does that mere presumption of ownership arising from registration, is that sufficient to create a federal question? And we contend that it is not. A good case that I think the court should consider in that regard is the Merrill Dow Pharmaceuticals v. Thompson case. It's cited in Gunn v. Minton. It's, in fact, cited in one of the cases that the appellee noticed yesterday. In the Merrill Dow Pharmaceuticals case, the plaintiff was a state court tort plaintiff in a negligence action. And the plaintiff sought to use the violation of a federal statute to establish negligence per se. In essence, to use a federal statute to establish the element of a state court tort. And I think that's analogous to our situation here. Yes, there is a federal statute that establishes ownership, but we are pursuing a state court remedy, and that is foreclosure. The second issue before the court deals with race judicata. And the issue is whether the private settlement between Chelda, another creditor, and the appellee's predecessor in interest, operates to essentially extinguish our equitable lien that was established by the Superior Court in Guilford County. And obviously, that would be a shocking result to my client to lose a half million dollar lien by virtue of an action that it was not involved in. And fortunately, that's not the law. I think the analysis begins with the Taylor v. Sturgill case from the Supreme Court. And if you read the Taylor v. Sturgill opinion, the Supreme Court is addressing when a non-party can be precluded. It's non-party preclusion. And the Supreme Court in Taylor v. Sturgill goes to great lengths to explain how fundamental the rule is that everyone should have his or her day in court, that it's not appropriate to bind someone who does not have a full and fair opportunity to litigate in the prior action. And therefore, that the exceptions to the non-party preclusion rule will be very discreet and limited. And in Taylor v. Sturgill, the court's first decision was to reject what was referred to as virtual representation. There were some circuits that had a virtual representation analysis that said, we're going to take this on a case-by-case basis, looking at the equities and the relationships between the parties and whether their interests are aligned. And based on all those factors, we'll decide whether you, non-party, will be precluded or not. And the Supreme Court says that is completely unworkable. The fundamental nature of your right to a day in court is too important to allow that sort of free-flowing analysis. There need to be very discreet and limited exceptions. And in fact, the court stated just last year in the Smith v. Bair case that the fundamental nature of the non-party preclusion rule and the narrowness of the exceptions go hand-in-hand. So Taylor cited six exceptions. And the only one that's been identified by the defendant in this case is the substantive legal relationships exception. Now, in Taylor v. Sturgill, the court gave three examples of substantive legal relationships that will give rise to non-party preclusion. Preceding and succeeding owners of property, which does not apply here. Bailor-bailee, which does not apply here. And assignor and assignee, which does not apply here. Notably, the court did not say debtor-creditor. Mortgageor-mortgagee. Leanor-leanee. And I think the conspicuous absence of those relationships, which are the relationships that are at issue in this case, demonstrates that that is not one of the relationships that gives rise to non-party preclusion. And in fact, the Supreme Court in the Chase v. Norwalk case cited in our brief many years earlier had said, and this is a quote from the case, that a decree against a mortgageor with respect to property does not bind a mortgagee. So in Taylor v. Sturgill, you have a list of the exceptions from which debtor-creditor, mortgageor-mortgagee is excluded. And in the Chase v. Norwalk case, you have a specific holding from the Supreme Court saying that a mortgageor-mortgagee relationship is not sufficient for non-party preclusion. I think where that leaves us is it really places a pretty heavy onus on the defendant in this case, whose burden it is to establish res judicata, that for some reason our equitable lien is substantially, so substantially different from a mortgage relationship that a lienor should be bound where a mortgagee is not. And while the defendant makes arguments in their brief that there are differences between mortgages and equitable liens, and certainly they are, they have different names, there's a difference between a security interest as well, there's no substantial difference that justifies why my client should be bound by a decision affecting its debtor, but a mortgagee should not be bound by a decision involving the mortgageor. There's just no fundamental distinction between the two. And in fact, the secondary sources, including the Restatement II, which was cited with favor by the Supreme Court in Taylor v. Sturgill, Section 54 of the Restatement of Judgment says concurrent owners, including mortgagees and owners of comparable equity and security interests, should not be bound. And that is exactly what we're asking the court to do today. The only other argument that I want to address just briefly that's raised by the defendants is the contention that my client somehow had a vested interest in the outcome, I believe is the terms that were used, in the outcome of the Middle District case, and we should therefore be bound. I think that argument's full of holes, and I'll just cite a few. First of all, it is not a Taylor v. Sturgill exception. And Taylor v. Sturgill, again, was very specific about the necessity for bright lines and sharp corners in identifying these exceptions. Second, although the defendants contend that it is not a virtual representation analysis, if you look at the substance of what is being argued in that portion of the defendant's brief, it is precisely a virtual representation analysis, that the parties generally had the same interests, that we wanted them to win, that there was some connection between the two. And that's exactly what the Supreme Court rejected in Taylor v. Sturgill. The Supreme Court said that that sort of free-form analysis is insufficient. And finally, any contention that my client benefited from the Middle District action is completely illusory. The contention is that we lost our equitable lien by virtue of a payment from the defendant's predecessor in interest to someone else. And how that could possibly help us, we don't see. There's an argument that we moved up in priority and are closer to being able to enforce our judgment against Shelda. But at the same time, we've lost our position as a secured party. And there's no indication that there's anything to recover from Shelda at this point. We needed those trademarks in order to recover in this case. With that, I'll reserve the rest of my time. Thank you. Thank you, Mr. Evans. Mr. Reardon? Thank you, Your Honors. May it please the Court, I'm Gavin Reardon from Guilford County, and I represent the defendant in this matter, R.R.A.J. Franchising, LLC. I'd like to summarize first. In the present case, federal jurisdiction was appropriate because the face of the complaint itself revealed two separate federal questions. The first question was whether or not Shelda owned the marks. These are federal trademarks, and whether or not they owned them. And that's a necessary element of their claim. They predicated their ownership on the federal registration and federal law. The second federal question was whether or not plaintiffs are entitled to get an injunction against the owner of a trademark, preventing an owner of federal trademarks from using their own trademarks. These two questions are substantial because the federal government and not the states provides the substantive law on the registration, enforcement, and use of trademarks. Therefore, under the facts of this case, the federal government has a direct interest in ensuring that state courts do not, under the guise of equity, give parties rights and remedies that are contrary to that federal substantive law. The questions are especially substantial because this is an issue of first impression, regardless of what the plaintiffs, how they try to frame it. No circuit court has ever examined the limits of an equitable lien. Furthermore, no federal court has ever held that an owner can be enjoined from using their own federal trademarks. Why is it necessary to determine in a federal action, in this case, whether Shelda owned the trademarks or not? Wasn't that already established? No, Your Honor, and they have never argued that. They said they agreed with your point, Judge Thacker, but they've never argued that themselves, and their complaint doesn't say that. What their complaint does, I mean, their brief is very clear. They say Shelda had a federal registration. It was five years. It's incontestable. That's their case. Why is it important? Because there is no, and let's clear some of the chaff away. We have never said, at this point, that their lien is invalid. We may get to that at some point, because we believe it violated the bankruptcy statement. That's a federal defense. That's not grounds for removal. So at this point, we admit that they have a lien, but what they have a lien in is whatever Shelda owned as of that lien date. So the entire case comes down to, what did they get a lien in? So their point, they argue that Shelda had a lien on these trademarks. We say they didn't. Whether they have a lien, isn't that a state law question? Whether they have a lien, yes, they have a lien. Whether they have a lien is a state law question. Is a state law question. You can't raise a federal question as a federal defense and create jurisdiction. You agree with that? We do agree with that. But the argument, let me back up to one of the questions that Judge Boyle asked them consistently. Why didn't you just move for a foreclosure action? They didn't need to bring this action to foreclose on their equitable lien. Judge Eagles already gave them an order. They could have gone right to the clerk and got an order that said, sell whatever trademarks Shelda owned as of that date in 2010. They didn't do that. They wanted something more. Why didn't they do that? Because if the sheriff had tried to sell that, or they had tried to sell it through a private sale, who's going to buy that? Because there was a question of what Shelda owned. So they wanted to go to court and have the court stick their imprimatur on it and say, hey, Shelda owned those trademarks. So if you buy at the sale, you're going to get those trademarks. That's what they really wanted because they knew there was a dispute over who owned those trademarks. That's what this case is really about, who owned those trademarks. Isn't that a question of state law? No, that is not a question of state law. That's a question of federal law because they're federal trademarks and they're relying on the Federal Registration and the Lanham Act to try to prove that ownership. But a state court can assess a state federal law in that context if your questions of ownership are state law questions. Well, absolutely, Your Honor. And if that was the only thing, if they had stopped there, there would be no federal jurisdiction. If they had stopped there saying, hey, we just need a determination of who owns these trademarks, because the state courts have concurrent jurisdiction. They can interpret or apply the Lanham Act. There's no objection to that. That's okay. But they didn't stop there. They asked for an injunction to prevent the owner from using its own trademarks. And that's another federal question. Once they've already said, hey, we're trying to prove it under the Lanham Act, you know, they've said in their reply brief that they haven't given any— Which is asking the state court to protect their ownership rights. Well, they've said they haven't cited any authority for where the court can do that. And actually, statutorily, there is no authority in North Carolina, which makes it a lot like the Bricado case. When you look at the reasons why the North Carolina court can grant an injunction, in the general statute 1-485, it does not allow— there's no provision in there that says you can tell an owner to not use its own thing. You can tell them not to go do something. You can't destroy it. You can't waste it. You can't sell it. All those things are okay. But they've already put themselves under the Lanham Act by having to rely on that ownership. So now we have to look and say, because the state court doesn't give it, is this something you can do under the Lanham Act? Your argument is that they're beyond ownership because they're asking now, not only is there ownership, but now what does ownership mean? What does ownership mean and what can we do about it? I mean, and they are trying to get a remedy that you can't get. I mean, the Lanham Act— The state court can decide that. No, the state court—this is because this is a question of first— in my opinion, Your Honor, in our opinion, a state court cannot determine that because this is a question of first impression. It goes to the interpretation of the Lanham Act. Can you under the Lanham Act— And a state court can interpret the federal law. But it seems to me that this is a federal defense that you've got to raise and I'm having trouble with the jurisdiction here. You're trying to stretch it, and I'm worried about that— making new law with this thing, new federal jurisdictional law. Well, Your Honor, and I think— That's another matter. Well, Your Honor, I think— and we're grateful for the opportunity to have oral argument in this case because, you know, I think we were very inefficient in our brief. We missed the case that we really should have been talking about, which was gun. That's where this argument should have started. What's that? The gun case—I'm sorry, the Grable case. The Grable and the gun cases were two— That's the Supreme Court case. Yes, Your Honor. And it laid out the four factors that we need to show, and that's really where we need it to be because I think so much of the argument has been in other places. But why is it a necessary federal question? Well, first of all, as we say, the first one is they've raised ownership. And we can't combine them all. We need to walk through them. The first question is they've raised federal ownership and that they have the authority to impose an injunction on a federal trademark. Those are federal questions. The next thing is we dispute them. We say you can't prove ownership. We've got to go to the facts of that, and we have to look at the Lanham Act to do that. And we don't agree, as a fundamental matter, that it's possible to get an injunction for this, that it's legally possible. So we have got the first two. There's a federal question, and it's in dispute. The next two questions really are substantiality and that federal-state balance. Well, is it substantial? Well, we believe it is. And really the substantiality comes from that injunction. Again, if it was just whether or not state courts can apply the Lanham Act, the ownership provisions, that's easy. They do that all the time, and they should be allowed to continue to do that. But what they've never done is decided that they can keep an owner from using its own trademark. And that's a question that if state courts are allowed to just start saying, oh, we're going to apply our equitable principles to ignore the Lanham Act, well, where does that go? Right now the Lanham Act says only the owner can sue for infringement. Can a state court say, well, equitably we're going to let other people do it also? And it's a question of first impression. Now, two years down the road after this court has spoken, then maybe the issue is no longer substantial because there's some sort of guidance on it. There's either a yes or a no. You can do it or you can't do it. And then there's that whole issue of the federalism concern, the balance. Well, as several cases talk about, if this case were allowed into federal court, it would affect a microscopic number of cases because it's an equitable lane and they're seeking an injunction against the owner. How many of those cases is any federal court going to see? But it would create some of those lines that we need to see. That's why we believe it is substantial and that it doesn't upset that balance. I see from your skepticism that I think we're still on the federal question issue. I think I may not have answered your question, Judge. That's fine. I just kind of had the feeling you're trying to stretch things a little bit. You're getting this thing in federal court. On the substantial prong, are you arguing that it is substantial because it's an issue of first impression? That's a part of it. That's definitely a part of it. Not every issue of first impression would ever be substantial. There's plenty of them that, okay, we've never considered, but why not let the state court? But this goes so much farther than any case has ever done, and there's certainly nothing in the federal statute that would allow it, and there's nothing even in North Carolina statute that would allow it. That's why it's substantial, is it really gives a non-owner, and we're talking about an equitable lien holder. It's not a mortgagor. It's not a licensor. As other cases talk about a privy in law, someone who has a very, very tiny right or interest, not even a right, an interest in a trademark, and suddenly they're going to have the power to stop the owner from using a trademark in interstate commerce. If all they had said was for the trademark was for their injunction, hey, you can't waste it, you can't try to transfer it, you can't do any of those things, well, that's normal things that state courts can do to protect the interest of a lawsuit, but this goes beyond that. This goes to the point of injuring interstate commerce, saying you cannot use that anywhere in this nation. And there's just no room in the Lanham Act for that. Now, granted, on review, maybe a court's going to say, ah, what the heck, let's let that happen. But it's never happened, and it is such a strange and unusual request that it should be looked at first by the federal courts, not by the state courts who have no guidance on this matter. If there's no further questions on that, I would like to address the race judicata issue. Obviously, the Taylor case is the case to look at, and we believe that this is one of those preexisting legal substantial relationships. And, again, this is an issue of first impression. No court's ever had to decide where does an equitable lien fit. So we are asking you to put it in a basket, either put it in the privity basket or put it in the non-privity basket. And we believe it should be put in the privity basket because of its nature and what it's more like. Now, of course— So you want us to decide two issues of first impression? Unfortunately, that's absolutely correct. And, yes, it would be easier to decide the first one against us, but both of them should be decided in our favor. And the reason there are two issues of first impression is because equitable liens are an unusual thing. On their face, they're kind of dubious because they look a lot like an assignment in gross. Now, the cases have said you can do it, but you have to transfer it with its goodwill, and your only interest is in having the thing sold and getting paid for it. And, again, that's one of the problems. Cases say those are your only interests. Get it sold, have it paid. There's no federal case that says get it sold, have it paid, get an injunction in that meantime. But, again, we pointed out some of the cases that talk about that an equitable lien is a privy in law alone. That's all you have. And it makes sense. Now, as the plaintiffs point out, a lot of these privity analyses go back to property law. Well, that's exactly what we pointed to. And it makes a lot of sense in the Reformation concept, in the Reformation type cases. You've got this tiny little interest. You didn't pay for it. You didn't change your position based on it. And they're not taking away anything you ever really had. In Reformation, what the court is doing is looking at the deed and fixing it. It's going backwards in time and pointing out, hey, look, this is what the deed should have been. We'd also point out that, again, a critical difference between mortgages. They keep saying that we haven't shown any relevant differences between mortgages and liens. Well, again, this is not a lien. It is an equitable lien. And that's something they continually allied over, that liens are very much like mortgages. They're just security interest in a different type of property. And as North Carolina law and many courts have said, one of the things you get with a normal lien is a right to possession. That's the same major right you have in a mortgage is that right to possession. You never have a right to possession with an equitable lien. That's what distinguishes it from all of these other interests. You have a very, very tiny interest. You don't have a right to possession. And, again, that's going back to the removal. That's one of our problems. We believe their injunction is really trying to assume possession in a way. I'd also like to ask this question. In your mind, what do you think the equitable lien meant? If everything went well, there was no question that they had the mark, they were using it, and nobody else was using it, they were using it. What would it mean in terms of collection? What would it mean to you? Oh, to us? Yeah. What would that mean in terms of their rights against your client? What would it mean? Assuming that we actually owned it? Yeah. Well, then they could have a foreclosure sale. Right. And then the— What would they get on the foreclosure? They can force a sale of the trademark and end its associated goodwill. And somebody can come along and they can pay some amount of money for that. Which is ending the federally registered trademark, isn't it not? Well, I believe that—and, again, there's just no cases that have— No, no, no. I'm asking you, isn't that their practical effect? You can foreclose on it. It means that if you have a state right of foreclosure, that means you have a right to—that's what it means. Foreclosure. End it. Notwithstanding whatever federal registration may exist, correct? Well, that's what I would think would happen, Your Honor. Then don't you concede, then, that this is interestingly a part of state power here, then, as to the lien aspect? And I think that's what they argue. Well, I think the foreclosure actually doesn't foreclose it because that would not help the buyer. The buyer doesn't want it foreclosed. You know, cut off, cease to exist. Oh, that's what I asked you, though, and you told me that remedy was just to go and foreclose, which means to end the federal registration as an ownership. Well, if it was foreclosed, our argument would be that it had been foreclosed and we could just re-register it. That would be our argument, that it was foreclosed. It's cut off. It becomes a common law trademark. We were first in use. We get to use it. That would be our argument if we ever have to get that. And you still can argue that. Yes. Right. But there are no cases that say what happens after you get the lien. That's one of the problems. There's no cases out there.  The fact that that question is not answered doesn't mean that this is intrinsically a federal question, though. That's what I'm trying to get you to answer, to respond to. Well, I agree that foreclosure of a neck of a lien is not a federal question. You know, if there was no question of whether or not they owned it, that child had owned it, and if they weren't seeking to enjoin the owner, there would be no federal questions here. There would be no substantial federal questions here. You know, that's why we don't agree with their framing that this is just about foreclosure of the lien. If those were the cases, if instead of representing RRIJ we were representing CHELDA, those issues wouldn't come up. But they're not suing the judgment debtor. They're suing somebody else, and they've got to make that link in ownership before they can get anywhere. And then, again, they don't stop there. If their complaint had just asked for an injunction preventing us from wasting, transferring, selling, doing anything like that, there are no federal questions. But they didn't do that. That's the problem. You know, they just went too far. Again, they could have just gone to the clerk and got an order of sale. Well, they already had an order of sale. They could have just gone to the clerk and got an execution. They didn't need to bring this action. Why did they bring this action? They wanted something more than just that execution. You don't need to go to the superior court for that. You don't need to ask the judge for that. So what did they want? They, in effect, wanted a declaration that the buyer was going to get something. And, frankly, we think the injunction is just to try to hold RRJ over a barrel so that RRJ will have to go to the auction and be the highest bidder. But that's really not the most important thing. The most important thing is they're trying to create new law here. You know, we at least admit that new law has to be created. If there are no further questions, thank you. I have a question. Do you think they could have bought a suit for conversion? You converted an asset that they had an equitable lien in and, therefore, just want the money that your client received for it. Just conversion. Equitable lien. And they just say that you received money for it and we want the money you received for it. Would that make it federal, too? Oh, no. No, absolutely not, Your Honor. I mean, I agree that there's a lie. And there's a question of what side of this line there are. And there's a huge range of cases that should not be brought into the federal court based on this. You know, we are not asking for a broad-brush rule. Again, we believe that the substantial federal question is whether or not a non-owner can enjoin the owner's use of a federally registered trademark under the Lanham Act. That is the narrow issue we are asking for. Thank you, Your Honor. Thank you very much, Mr. Breeden. I appreciate it. Mr. Evans? Thank you. If the court please, I'll be very brief. You said that you had a lot of arrows in your quiver and you pulled one too many. Well, that appears to be now the primary argument from the defendants is that the injunction aspect somehow creates federal jurisdiction. I want to clarify that. First of all, the North Carolina General Statutes, this is section 1-339.3, provides that the judge or clerk of court having jurisdiction has authority to fix and determine all necessary procedural details with respect to all sales in all instances. It is a common practice, at the risk of sounding like the U.S. Attorney's Office in the prior case, it is a common practice for creditors to seek to enjoin a party's use of collateral when it is being held for sale. The injunction sought in our complaint, and this is at page 13 of the Joint Appendix, the injunction does not seek a Lanham Act injunction. We are not alleging infringement. What we are doing is seeking to protect the collateral once a sale is permitted. The injunction specifically says, the injunction that we seek in paragraph 13. Counsel, how in the world could it hurt your client for them to continue to use their mark while you're trying to foreclose on the property? It would help you. It's only once the sale is permitted. In other words, the purpose that was being sought here is only to prevent two parties from using the collateral at the same time. So once the sale is ordered, once the sale is ordered by the local Superior Court judge, that that asset then transfers and that the other party can't continue to use it. But the other party being a registered trademark owner. But once it's sold, they're no longer the owner. That's the purpose of the sale. Once it's sold, but an injunction is proscriptive. You want to prescribe their activity with their registered, federally registered and owned trademark before it's sold. Is that correct? No, only once the sale is ordered. We specifically request once a judicial sale of the marks is permitted, then we want the injunction. No, no, a sale, what do you mean? Let's not use lawyer terms. A sale is permitted means you're permitted to proceed to sell it. Let's call it closed. Real estate people call it closed. Right. You want an injunction before the sale is closed, correct? No, Your Honor. We want an injunction in connection with the sale. When the item is sold, we want them restrained from using it further. You want it post-closing. Exactly. You made that clear in your, did you make that clear in his post? Because counsel seemed to be at a disconnect. He seems to suggest that you want it prescribed use while you own it. This, what we specifically saw in our injunction, and, again, this is consistent with common practice in a creditor's right. But you read it while it was in the complaint? It says paragraph 49 of the complaint? Is that what you're reading? Correct. Once a judicial sale of Shelders, Marks, and Goodwill is permitted, comma. Correct. Permitted, but that's not the same thing as closing. It is different. If there was unclarity, I apologize for the ambiguity. We were not seeking a preliminary injunction, a prescriptive use before the sale is closed. But you certainly didn't believe it was accuracy. Yeah, because you can permit a sale, and a sale may not take place for two years. Yeah, absolutely. Yes, courts do it all the time. I'm permitting you to sell this property. It may take two years to get a buyer for that, but it's just permitted. Correct. So you're now saying, or a tenant almost in terms of the supplemental pleading, that I meant that to mean post-closure. Certainly. That was our intention is to protect the asset for the purchaser. We may have saved some time and money if we had done that move. I apologize for being inartful in my pleading, ironically enough. If there are no further questions, we would ask the court to reverse the bill. Thank you. Thank you, Mr. Evans. We'll adjourn court. Charleston, South Carolina, Sonny Dye. Afterwards, we'll come down to Greek Council. Congress will, of course, adjourn.
judges: Robert B. King, Roger L. Gregory, Stephanie D. Thacker